UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER PHILLIPS, TONYA BUSH, SABRINA OWENS, KATRINA COLLINGE, KIMBERLY NILES, AMANDA FELGAR, DEBORAH HAVERKAMP, KIM WARD, TAMATHA CHEATHAM, HELIMA WOODLAND, WHITNEY JUDSON, and KIM MAYS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HELP AT HOME, LLC, f/k/a HELP AT HOME, INC., JOEL DAVIS, RICHARD CANTRELL, and MARY ANN NEWBERN,<br><br>Defendants. | Case No. 15-cv-8954<br>Hon. John Z. Lee<br>Magistrate: Hon. Sheila Finnegan |

**DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COLLECTIVE AND CLASS ACTION COMPLAINT**

Defendants, HELP AT HOME, LLC, f/k/a HELP AT HOME, INC. ("Help At Home"), JOEL DAVIS, RICHARD CANTRELL, and MARY ANN NEWBERN, by their attorneys, LEWIS BRISBOIS BISGAARD & SMITH LLP, for their Corrected Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' First Amended Collective and Class Action Complaint ("Memorandum"), state as follows:

**I. INTRODUCTION**

After years of discovery comprising more than ten (10) depositions, including two (2) Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 30(b)(6) depositions, numerous interrogatories, briefings on multiple motions to compel, and nearly 40,000 pages of responsive document production, Plaintiffs, JENNIFER PHILLIPS and TONYA BUSH, realized that there

is no class to certify in this case. On September 19, 2018, in an effort to salvage their causes of action, Plaintiffs Phillips and Bush, along with ten (10) new Plaintiffs – SABRINA OWENS, KATRINA COLLINGE, KIMBERLY NILES, AMANDA FELGAR, DEBORAH HAVERKAMP, KIM WARD, TAMATHA CHEATHAM, HELIMA WOODLAND, WHITNEY JUDSON, and KIM MAYS – filed their First Amended Collective and Class Action Complaint ("First Amended Complaint") [Dkt. #163][1] that alleges the creation of a *de facto* "Policy" they define via a series of mere assertions – not evidence – so vague and incoherent that, far from establishing any uniformity, actually demonstrate the lack of a cohesive class element essential for their case.

Measured against the standards outlined in the seminal *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), Plaintiffs cannot state a plausible claim for relief with the "facts" as alleged. Meanwhile, two (2) of the new Plaintiffs, Helima Woodland and Kim Mays, cannot assert claims against Help At Home. And finally, specific claims regarding new Defendants Mr. Davis, Mr. Cantrell, and Ms. Newbern do not relate back to the original Collective and Class Action Complaint ("Complaint") [Dkt. #1]. Plaintiffs' First Amended Complaint should be dismissed with prejudice.

## II.  LEGAL STANDARD

### A.  Motions to Dismiss and Relation Back.

#### 1.  Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) motions to dismiss for inadequate pleading are decided under the U.S. Supreme Court's *Iqbal-Twombly* standard. *Iqbal*, 556 U.S. 662; *Twombly*, 550 U.S. 544.

---

[1] Plaintiffs withdrew their prior version [Dkt. #122-1] after briefing on the associated Motion for Leave to File an Amended Complaint, With Summons to Issue Against New Defendants [Dkt. #122] was nearly complete.

Although all well-pleaded factual allegations in complaints are accepted as true, plaintiffs must nevertheless "state a claim to relief" that is facially plausible. *Iqbal*, 556 U.S. at 678 (internal quotations omitted). Plaintiffs' allegations must permit the court to reasonably infer that defendants are liable. *Id.* However, the reviewing court need not automatically accept legal conclusions that are actually disguised as factual allegations. *Id.* For purposes of this case, Plaintiffs must plead sufficient facts establishing: a suitable proposed class subject to a cognizable common policy.

Importantly, "there's nothing wrong with relying on summary-judgment cases at the pleading stage to explain the substantive legal standards that apply to the case…[e]ven the Supreme Court in *Twombly* – the seminal pleading-standards case – looked to an opinion rendered at the summary-judgment stage to determine the substantive legal standard to apply at the pleading stage." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014).

### 2. Relation Back

Fed. R. Civ. P. 15 governs relation back of amendments. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010). The relation back doctrine permits adding new parties or claims that "relate back" to the date of the original pleading even if the amendment is otherwise untimely. *Springman v. AIG Mktg., Inc.*, 523 F.3d 685, 688 (7th Cir. 2008). "In considering whether an amendment adding plaintiffs may relate back, federal courts look to the following factors: adequacy of notice given to the defendant, identity of interests between original and new plaintiffs, and any prejudice that may result to the defendant." *Anderson v. City of Wood Dale*, 1995 U.S. Dist. LEXIS 2873 at **7-8 (N.D. Ill. Mar. 8, 1995). The same is true when adding new defendants: "[t]he criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have

been surprised by the amplification of the allegations of the original complaint in the amended one." *Santamarina v. Sears*, 466 F.3d 570, 573 (7th Cir. 2006).

The FLSA prescribes a statute of limitations of two (2) years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). A cause of action accrues within the meaning of Section 255 "when there is a breach of duty by [the employer], not when there has been some qualitative evaluation that there is, or may be, a viable legal claim." *Sylvester v. Wintrust Fin. Corp.*, 2014 U.S. Dist. LEXIS 135907, n. 7 (N.D. Ill. Sept. 26, 2014) (internal quotations and citation omitted). Plaintiffs' claims accrued when they were allegedly paid less than required under the FLSA. *Cook v. U.S.*, 855 F.2d 848, 851 (Fed. Cir. 1988) (questioned on unrelated grounds in *Doyle v. U.S.*, 20 Cl. Ct. 495, 499 (Cl. Ct. 1990).

### III. ARGUMENT

Over 36 months, Plaintiffs fruitlessly searched for a common policy with respect to their original claims for unpaid overtime that extended beyond less than half-a-dozen Help At home branches. Failing to find factual support for such a policy, they now allege an unwritten, non-policy "Policy" that allegedly permeates every Help At Home operation regardless of whether it is providing in-home housekeeping care for the elderly, nursing care for the disabled, resident oversight for mentally disabled clients, or any of its other myriad services.

Plaintiffs' First Amended Complaint does not pass muster because it fails to state a claim upon which relief can be granted: the speculative and fantastical *de facto* "Policy" referenced throughout is wholly unsupported by legitimate facts. New Plaintiffs Helima Woodland's and Kim Mays's claims are barred on relation back grounds. And the claims against Mr. Davis, Mr. Cantrell, and Ms. Newbern do not relate back to the original Complaint. Because Plaintiffs fail

to state a claim upon which relief can be granted, this Court should deny their First Amended Complaint.

A.  **Plaintiffs' First Amended Complaint Fails to State a Claim Because the *De Facto* Policy is a Fiction Untethered to Any Legitimate Factual Support.**

The crux of Plaintiffs' case is contained in Paragraph 84: "[Mr.] Davis and the RVPs, on behalf of Help [A]t Home, have adopted a *de facto*, unwritten, company-wide policy (the 'Policy') whereby Supervisors are forced to falsify their timesheets to diminish or eliminate the number of overtime hours that they worked in a given week." First Amended Complaint at ¶ 84. In so characterizing the Policy as *de facto*, Plaintiffs necessarily concede that there is no documented evidence of any such Policy. In short, the *absence* of an actual policy apparently suffices to create the *de facto* Policy – with the illogical conclusion that Help At Home is liable either way. This is an insurmountable paradox that effectively precludes any claim for plausible relief.

Plaintiffs further state: "[Mr.] Davis and the RVPs…created and maintained this Policy by implementing structural barriers, establishing procedures, and employing deceptive tactics *that they know* will cause, and have caused, Supervisors to inaccurately record the time that they worked on their timesheets." First Amended Complaint at ¶ 89 (emphasis added). But there are no factual allegations in the First Amended Complaint that such speculative thoughts or causal links resulted from Mr. Davis's or the RVPs' actions – whatever those actions actually were.[2]

---

[2] The examples are too numerous to identify individually, but a perfunctory sampling demonstrates that Defendants' position is correct. *See* First Amended Complaint at ¶ 95 (stating "Supervisors have no choice but to inaccurately record the time", which is conclusory and unsupported); ¶ 98 (discussing how the "impression" that overtime work is undesirable, extravagant, and unnecessary is bolstered by a general desire to minimize overtime, which is conclusory and describes a non-uniform Policy); ¶ 100 (stating "Supervisors *believe* that they will not be compensated for unapproved overtime" (emphasis added), which is speculative and unsupported by evidence to validate Supervisors' alleged beliefs); ¶¶ 102-104 (discussing the alleged automatic lunch deduction with conclusory language suggesting that unspecified enforcement of a nebulous Policy discourages accurate time recording with no factual support); ¶ 194 (containing a series of wholly speculative allegations about how Defendants effectuate a
(footnote continued)

Contradictorily, Plaintiffs claim that Plaintiffs Phillips's and Bush's branch manager informed them of the existence of the Policy and that Mr. Cantrell alone created the Policy. First Amended Complaint at ¶ 221. Given the other allegations in the First Amended Complaint – that the Policy is ephemeral and unwritten, that it was not disseminated through directives or training – it is simply implausible that Mr. Cantrell, or any other member of Help At Home, could actively create what Plaintiffs themselves describe as an informal *de facto* Policy, or that a Policy Plaintiffs further describe as unwritten and not formally disseminated through the Company actually comes to the attention of anyone other than the originators of that Policy. Most extraordinarily, Paragraphs 178 and 179 reference how Mr. Davis and the RVPs failed to train or inform branch managers that they can do anything but enforce a Policy previously identified as unwritten, not articulated by anyone, and not disseminated in any way.[3]

Aside from the confused and disjointed allegations throughout the First Amended Complaint, this circuit's jurisprudence militates against accepting Plaintiff's speculative musings about a *de facto* Policy. Indeed, courts are loath to accept allegations about "*de facto*" policies, even when better supported than Plaintiffs' unsubstantiated "Policy" here. For instance, in considering the allegations contained in the plaintiffs' papers, including declarations, one court highlighted that nowhere did they "cite a specific, concrete, management directive concerning

---

nefarious Policy with absolutely no factual support); ¶¶ 195-196 (stating "even in the absence of any explicit directive…[Defendants] create the necessary conditions precedent for the existence of the Policy" and then concluding that Defendants have, in fact, issued a directive to abide by the Policy – allegations that are unsupported by facts, are entirely speculative and, in fact, contradict each other).

[3] In the withdrawn original proposed First Amended Complaint, the nearly-identical Paragraphs 148 and 149 omit the language about Mr. Davis and the RVPs instructing branch managers to abide by the Policy. Thus, Plaintiffs have attempted to include just enough extra verbiage to salvage their claims about a *de facto* Policy while also asking this Court to accept all of the other allegations about that same Policy. Where earlier it was apparently disseminated via some unknown method, apparently now it is a *de facto*, unwritten, and un-disseminated Policy – *except* in those instances where Plaintiffs realized that they severely need to rehabilitate their allegations. Of course, whether the allegation is speculative and conclusory or, as here, merely conclusory with no legitimate factual support, the result is the same.

plaintiffs' off-the-clock work or any purported requirement not to record hours worked...[l]imited, anecdotal evidence concerning a *de facto* compensation policy is insufficient to establish commonality." *Bradley v. Arc of Nw. Ind., Inc.*, 2015 U.S. Dist. LEXIS 60985 at *14 (N.D. Ind. May 11, 2015) (internal quotations omitted).

>   Similarly, in *Smith v. Family Video Movie Club, Inc.*, the court noted that

>> Plaintiffs identify various management policies as evidence of a company-wide *de facto* policy that permitted off-the-clock work. In particular, Plaintiffs identify: (1) …instructions that overtime should be avoided whenever possible and be preapproved if taken…(2) instructions in the Employee Handbook to store managers about running store operations efficiently with minimum staffing…(3) labor forecasting tools and procedures for payroll auditing used to track sales transactions per hour for purposes of staffing adjustments…and, (4) written policies allotting employees only thirty minutes to open and close stores[.]

2015 U.S. Dist. LEXIS 43335 at *21 (N.D. Ill. Mar. 31, 2015) (internal citations and quotations omitted). However, even with discrete examples purporting to demonstrate how the defendant effectuated such a company-wide *de facto* policy, the court found the examples wanting: "…individual variance driven by store manager discretion suggests that the policies Plaintiffs identify did not promote a *de facto* company-wide policy requiring off-the-clock work." *Id.* at **22-23. Another Seventh Circuit court integrated striking language that seems tailor-made for the instant controversy: "Plaintiffs have not established a *de facto* uniform policy…Plaintiffs assert that upper management instructed supervisors to discourage, prevent, or limit…the no-lunch option. Their assertion that such a policy existed is *based on speculation and equivocation*[.]" *Miller v. Thedacare Inc.*, 2018 U.S. Dist. LEXIS 7767 at **14-15 (E.D. Wis. Jan. 18, 2018) (emphasis added).

Plaintiffs' claims regarding the fabricated *de facto* Policy are bereft of factual support and, consisting solely of conclusory allegations, fails to state a claim upon which relief can be granted. The First Amended Complaint should be dismissed with prejudice.

**B.     Plaintiffs' First Amended Complaint Does Not Relate Back With Respect to New Plaintiffs Helima Woodland and Kim Mays.**

Plaintiffs Woodland and Mays cannot assert claims in this action. Again, in assessing whether an amendment adding new plaintiffs relates back, courts consider adequacy of notice, identity of interests between original and new plaintiffs, and prejudice to the defendant." *Anderson*, 1995 U.S. Dist. LEXIS 2873 at \*\*7-8. In determining that the amendment did not relate back to the new plaintiffs, the court in *Anderson* noted that

> the facts surrounding each individual plaintiff's hiring and termination dates as well as the length and terms of employment of each plaintiff are different. Additionally, plaintiffs have not offered any persuasive justification as to why the additionally named plaintiffs were not named in the original complaint. In fact, it appears as though additional plaintiffs were added to the lawsuit when it became convenient to do so…plaintiffs do not share the requisite identity of interests, defendant was not given sufficient notice and defendant will suffer prejudice due to the naming of additional plaintiffs.

1995 U.S. Dist. LEXIS 2873 at \*\*9-10.

These considerations apply here. Plaintiffs filed their original Complaint on October 8, 2015. There, they allege that Help At Home "employs staffing supervisors…who oversee the caretakers and the provision of Defendants' home healthcare services to customers. Plaintiffs [Phillips and Bush] were Supervisors when they were employed by [Help At Home]." Complaint at ¶ 34. There are no distinctions among Help At Home's services. *See generally* Complaint. In contrast, the First Amended Complaint contains numerous allegations distinguishing among three (3) discrete service lines: Personal Care ("PC"), Developmentally

Disabled ("DD"), and Skilled. *See, e.g.*, First Amended Complaint at ¶¶ 34, 38, 46, 49 (describing the differences). The First Amended Complaint also incorporates a series of subclasses arising in part from these differences. Plaintiff Woodland is identified as working in a DD capacity from March 2013 through 2017, First Amended Complaint at ¶¶ 308-309, and Plaintiff Mays is identified as working in a DD capacity from November 2015 to November 2016, First Amended Complaint at ¶¶ 334-335.

That the original Complaint does not incorporate these critical distinctions – and, indeed, sought only to advance claims on behalf of a putative class of Supervisors similar to original Plaintiffs Phillips and Bush, who are identified as having worked in a PC capacity, First Amended Complaint at ¶¶ 204, 213 – evinces that the claims Plaintiffs Woodland and Mays assert *cannot* relate back. Defendants were not on notice that such claims were contemplated in the original Complaint; indeed, it seems clear that these Plaintiffs were added to the lawsuit "when it became convenient to do so" and that they "do not share the requisite identity of interests" with the PC Plaintiffs. *Anderson*, 1995 U.S. Dist. LEXIS 2873 at *9.[4]

For these reasons, Plaintiffs Woodland and Mays should be dismissed with prejudice.

C. **The Claims Against the Individual Defendants Do Not Relate Back.**

The First Amended Complaint untimely adds additional Defendants. Regarding the proposed new Plaintiffs, the alleged failure to pay overtime allegations arise out of new transactions and employment relationships. The original 2015 lawsuit stems back three (3) years from 2015. The new lawsuit is a different controversy involving separate transactions during a different time period, and adding the new proposed Plaintiffs now is merely a transparent and

---

[4] Plaintiff Mays is also inappropriately named considering her tenure with Help At Home began one (1) month after Plaintiffs filed their original Complaint. First Amended Complaint at ¶¶ 334-335. Accordingly, she is beyond the FLSA's statute of limitations.

prejudicial attempt to capture Mr. Davis, Mr. Cantrell, and Ms. Newbern, who had no reason to believe that they should have been named as defendants at the outset. Mr. Davis was first deposed over one (1) year ago on April 18, 2017; Mr. Cantrell was deposed more than a year-and-a-half ago on December 21, 2016; and Ms. Newbern was deposed nearly a year ago on September 25, 2017. Plaintiff's amendment is by definition prejudicial and untimely because there is nothing tending to put them on notice that they should have been named defendants originally – and the original individual Defendant, Ronald Ford, was voluntarily dismissed. *Joseph*, 638 F.3d at 559-60. The statute of limitations as to these additional defendants has run, and any amendment is untimely.

More importantly, the First Amended Complaint is predicated on Mr. Davis, Mr. Cantrell, and Ms. Newbern conspiring to create and then somehow promulgating by *not promulgating* a *de facto* Policy to improperly compensate their employees. *See* Memorandum at § III.A., *supra*. The original Complaint describes merely a *de jure* undercompensation policy by Help At Home generally. The focus when new parties are added is the defendants' knowledge, or whether what they "reasonably should have understood about the plaintiff's intent in filing the original complaint[.]" *Krupski*, 560 U.S. at 554. The original Plaintiffs are now identified as having in worked in Mr. Cantrell's region, First Amended Complaint at ¶¶ 203-222, while Mr. Davis is alleged to generally oversee Mr. Cantrell and the other Regional Vice Presidents ("RVPs"), First Amended Complaint at ¶ 73. Yet, none of the individual Defendants were named in the original Complaint, which again is silent on the issue of a speculative *de facto* Policy that was apparently created, enforced, maintained, and promulgated (somehow) by the individual Defendants.

In short, there is nothing in the original Complaint save the inclusion of Help At Home as a Defendant that should have alerted Mr. Davis, Mr. Cantrell, and Ms. Newbern that they could have been named at the outset. Thus, these Defendants should be dismissed.

## IV. CONCLUSION

WHEREFORE, Defendants, HELP AT HOME, LLC, f/k/a HELP AT HOME, INC., JOEL DAVIS, RICHARD CANTRELL, and MARY ANN NEWBERN respectfully request that this Honorable Court grant their Motion to Dismiss Plaintiffs' First Amended Collective and Class Action Complaint *en toto* with prejudice and award all other relief deemed just.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: */s/ Daniel K. Cetina*
One of Its Attorneys

Siobhán M. Murphy (ARDC No. 6207431)
Siobhan.Murphy@lewisbrisbois.com
John J. Michels, Jr. (ARDC No. 6278877)
John.Michels@lewisbrisbois.com
Dawn L. Johnson (ARDC No. 6243191)
Dawn.Johnson@lewisbrisbois.com
Daniel K. Cetina (ARDC No. 6320423)
Daniel.Cetina@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
P: 312.345.1718
F: 312.345.1778
Attorney for Defendants