IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER PHILLIPS, TONYA BUSH, SABRINA OWENS, KATRINA COLLINGE, KIMBERLY NILES, AMANDA FELGAR, DEBORAH HAVERKAMP, KIM WARD, TAMATHA CHEATHAM, and HELIMA WOODLAND, individually, and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) No. 15 C 8954 ) |
| v. | ) Magistrate Judge Finnegan ) |
| HELP AT HOME, LLC, f/k/a HELP AT HOME, INC., JOEL DAVIS, RICHARD CANTRELL, and MARY ANN NEWBERN, | ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jennifer Phillips and Tonya Bush filed suit against Defendant Help At Home, LLC f/k/a Help At Home, Inc. ("Help At Home") on October 8, 2015, seeking to represent a class of Supervisors who allegedly were not paid the proper minimum wages and overtime compensation for hours they worked, mainly while on-call, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.[1] On September 19, 2018, Plaintiffs filed a First Amended Complaint ("FAC") that: (a) added 8 new plaintiffs (Sabrina Owens, Katrina Collinge, Kimberly Niles, Amanda Felgar, Deborah Haverkamp, Kim

---

[1] Plaintiffs also assert claims for violation of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*., and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq*., for relief under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et seq*., and for conversion.

Ward, Tamatha Cheatham, and Helima Woodland);[2] (b) added 3 new defendants (Joel Davis who is President and former Chief Operating Officer of Help At Home, Richard Cantrell who is Chief Operating Officer and former Regional Vice President, and Mary Ann Newbern who is a Regional Vice President); and (c) modified the allegations to state that Help At Home had a *de facto* as opposed to a written Policy to not pay overtime wages (Doc. 163). Defendants have moved to dismiss the FAC for failure to state a viable claim for relief. Defendants also seek to dismiss plaintiff Woodland and defendants Davis, Cantrell, and Newbern, arguing that any claims relating to these individuals are barred by the applicable statute of limitations and cannot relate back to the original Complaint. For the reasons stated here, the motion is denied.

## DISCUSSION

A.   Motion to Dismiss for Failure to State a Claim

    1.   **Standard of Review**

In evaluating the sufficiency of a complaint under Rule 12(b)(6), the Court must construe it in the "light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the nonmoving party's] favor." *Zahn v. North Am. Power & Gas, LLC*, 847 F.3d 875, 877 (7th Cir. 2017). "To survive a motion to dismiss, the plaintiff must do more in the complaint than simply recite elements of a claim; the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S.

---

[2]   Plaintiffs also named Kim Mays and Whitney Judson as party plaintiffs but voluntarily dismissed them on November 15 and December 13, 2018, respectively. (Docs. 190, 193, 204, 206).

544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. *See also Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir. 2017). A complaint must also provide "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Defender Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 335 (7th Cir. 2015) (quoting *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010)).

The Seventh Circuit has not explicitly ruled on the level of detail required to state a claim under the FLSA, but courts generally agree that "merely reciting the elements of a[n] FLSA overtime claim will not suffice" to survive a motion to dismiss. *Hancox v. Ulta Salon, Cosmetics, & Fragrance, Inc.*, No. 17 C 1821, 2018 WL 3496086, at *3 (N.D. Ill. July 20, 2018) (citing *Trujillo v. Mediterranean Kitchens, Inc.*, No. 17 C 1887, 2017 WL 2958240, at *1 (N.D. Ill. July 11, 2017) ("[C]ourts of this district have generally agreed that a plaintiff must plead details beyond having worked more than 40 hours without overtime to state a claim under the FLSA.")). At the same time, a plaintiff is not required to "identify, by date, the specific weeks in which she was undercompensated." *Id.* (citing *Diaz v. E&K Cleaners, Inc.*, No. 16 C 7952, 2018 WL 439120, at *1 (N.D. Ill. Jan. 16, 2018)). Rather, "it is enough to allege that there was in fact at least one . . . week" when the plaintiff was undercompensated for her overtime work. *Id.* at *4.[3]

---

[3] The same analysis applies to claims under the IMWL. *See Deschepper v. Midwest Wine and Spirits, Inc.*, 84 F. Supp. 3d 767, 778 (N.D. Ill. 2015) (denying motion to dismiss IMWL claim that "tracks the[] FLSA claim" since "the court's FLSA analysis applies equally to the plaintiffs' IMWL claim."). Though Defendants purport to seek dismissal of the entire FAC, they do not raise

3

### 2. Analysis

Defendants do not dispute that the FAC sufficiently alleges that there was at least one week when each Plaintiff was not compensated for all of the hours she worked for Defendants. (*See* Doc. 163, FAC, ¶¶ 203-20 (Phillips and Bush), 223-36 (Owens), 239-51 (Collinge), 253-75 (Niles and Felgar), 277-87 (Haverkamp), 289-306 (Ward and Cheatham), 308-20 (Woodland)). In seeking dismissal, Defendants instead object that Plaintiffs cannot state an FLSA claim based on a *de facto*, unwritten policy. (Doc. 187, at 5). As explained here, this argument is without merit.

The FAC alleges that Defendants adopted a "*de facto*, unwritten, company-wide policy (the "Policy") whereby Supervisors are forced to falsify their timesheets to diminish or eliminate the number of overtime hours that they worked in a given week." (Doc. 163, FAC, ¶ 84). Defendants allegedly "created and maintained this Policy by implementing structural barriers, establishing procedures, and employing deceptive tactics that they know will cause, and have caused, Supervisors to inaccurately record the time that they worked on their timesheets." (*Id.* ¶ 89). When Phillips and Bush complained to their Branch Manager about the Policy, the Branch Manager "informed them that Cantrell had created the Policy, and that Cantrell would not allow her to change the Policy." (*Id.* ¶ 221). At the same time, Defendants "fail[ed] to train or inform Branch Managers that they ha[d] authority to do anything other than enforce the Policy." (*Id.* ¶ 178).

Defendants argue that by characterizing the Policy as *de facto*, Plaintiffs "necessarily concede that there is no documented evidence of any such Policy." (Doc. 187, at 5). In Defendants' view, without such documented evidence Plaintiffs are

---

specific objections to the sufficiency of Plaintiffs' claims for relief under the IWPCA, the DJA, or the conversion doctrine. Those claims are thus not at issue here.

illogically seeking to hold them liable for a nonexistent policy that no one could have known about because it was "unwritten" and "not disseminated through directives or training." (*Id.* at 5-6). As proof that this theory of recovery is not viable, Defendants cite to several cases where courts have found allegations of an unwritten, *de facto* policy insufficient to support class or collective certification. (*Id.* at 6-7) (citing *Miller v. ThedaCare Inc.*, No. 15 C 506, 2018 WL 472818, at *5, 7 (E.D. Wis. Jan. 18, 2018) (granting motion to decertify conditional FLSA collective based on an unofficial policy to "discourage, disallow and limit employee use of the no-lunch option" given "[t]he wide variation in the percentage of shifts in which employees used the no-lunch option."), *Bradley v. Arc of Northwest IN, Inc.*, No. 2:14-cv-204, 2015 WL 2189284, at *5 (N.D. Ind. May 11, 2015) (denying motion for collective certification where the plaintiff failed to identify a specific "decision, policy, or plan" to not pay overtime and acknowledged she received overtime compensation for some of the hours worked beyond 40 for some weeks), and *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2015 WL 1542649, at *7 (N.D. Ill. Mar. 31, 2015) (decertifying conditional FLSA collective based on *de facto* policy requiring employees to perform off-the-clock tasks because of "individual variance [in who worked off-the-clock] driven by store manager discretion.")).

The problem for Defendants is that courts have also granted class or FLSA collective certification based on the existence of an unofficial and unwritten policy of denying proper wages. *See, e.g., Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 371 (7th Cir. 2015) (affirming class (and collective) certification based on an alleged "unofficial policy of frequently denying proper compensation to . . . non-exempt employees who have worked overtime."); *Bitner v. Wyndham Vacation Resorts, Inc.*, No. 13-CV-451-wmc,

5

2016 WL 7480428, at *1 (W.D. Wis. Dec. 29, 2016) (certifying class and declining to decertify FLSA collective of sales representatives allegedly subject to "an unofficial policy that required them to perform unpaid, off-the-clock work."). Defendants may believe that the *de facto* Policy at issue here most closely resembles the situations presented in *Miller*, *Bradley*, and *Smith* as opposed to *Bell* and *Bitner*, but it is neither necessary nor appropriate for the Court to decide that issue since this case is not yet at the class certification stage.

For purposes of the motion to dismiss currently before the Court, Plaintiffs have sufficiently alleged that there is a *de facto* Policy, and that as a result of the Policy, they and "other individuals employed by [Defendants] were not properly paid overtime wages within the limitations period." *Nava v. Barton Staffing Solutions, Inc.*, No. 15 C 7350, 2016 WL 3708684, at *3 (N.D. Ill. Jan. 11, 2016). Defendants argue that the Policy-related allegations are speculative, conclusory, and implausible, (Doc. 187, at 4, 6, 8), but the FAC contains sufficient detail regarding the implementation, enforcement, and perpetuation of the Policy to withstand scrutiny under *Iqbal* and *Twombly*. (Doc. 163, FAC, ¶¶ 84-194). Defendants' real objection is that a *de facto*, unwritten Policy is by definition speculative and so cannot form the basis of an FLSA collective action. The Court already rejected this argument, and the mere possibility that the *de facto* Policy may ultimately fail to pass muster at the class or collective certification stage in no way demonstrates that the FAC must be dismissed for failure to state a claim under Rule 12(b)(6). *Id.* ("Issues related to the viability of a collective action . . . are appropriate for the certification stage."). This portion of Defendants' motion to dismiss is therefore denied.

**B. Motion to Dismiss FLSA Claims Asserted by Helima Woodland**

Defendants next argue that the FLSA claims of Helima Woodland (one of the 8 newly-added Plaintiffs) must be dismissed because they are untimely. Unlike class actions filed under Rule 23, "the filing of a collective action does not toll the statute of limitations for putative [FLSA] collective members."[4] *Sylvester v. Wintrust Fin. Corp.*, No. 12 C 1899, 2013 WL 5433593, at *9 (N.D. Ill. Sept. 30, 2013) (citing 29 U.S.C. § 256(b)). The statute of limitations for claims brought under the FLSA is two years "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Plaintiffs filed the FAC on September 19, 2018, alleging that Defendants willfully violated the statute. (Doc. 163, FAC, ¶ 403). *See Divine v. Volunteers of Am. of IL*, 319 F. Supp. 3d 994, 1001 (N.D. Ill. 2018) ("At the pleading stage . . . all that is required is a general allegation that the defendant's actions were willful."). In order to be timely, Woodland's claims must have accrued no later than September 19, 2015, or three years prior to the September 19, 2018 filing date. For statute of limitations purposes, FLSA claims accrue each payday. *Nehmelman v. Penn Nat'l Gaming, Inc.*, 790 F. Supp. 2d 787, 792 (N.D. Ill. 2011) (collecting cases).

**1. Claims From September 19, 2015 Forward**

The FAC alleges that Woodland worked for Defendants as a Supervisor from March 2013 until "in or about 2017." (Doc. 163, FAC, ¶¶ 308, 309). Any FLSA claims Woodland may have from September 19, 2015 forward fall within the three-year statute

---

[4] Defendants do not challenge Plaintiffs' assertion that Woodland's IMWL claims were tolled by the filing of the Rule 23 class action. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). To the extent Defendants deny that Woodland was a member of the class set forth in the original Complaint, the objection is overruled for the reasons discussed *infra* pp. 9-11.

of limitations period and so are timely. Defendants do not address this issue and the motion to dismiss is denied as to these claims.

## 2. Claims Prior to September 19, 2015

The analysis is different for FLSA claims that accrued prior to September 19, 2015, so are beyond the statute of limitations. If the statute of limitations has run against a putative party's claims, those claims "are only timely if [the] amended complaint relates back to [the] original complaint pursuant to [Rule 15(c)(1)(C)]." *Bagley v. City of Chicago*, No. 17 C 6943, 2018 WL 3545450, at *3 (N.D. Ill. July 24, 2018). *See also Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010) ("Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations."). Although Rule 15(c) does not explicitly address the addition of new plaintiffs, the Advisory Committee Notes state that "the attitude toward change in defendants extends by analogy to changing plaintiffs." *Sherwin Manor Nursing Ctr. Inc. v. McAuliffe*, No. 92 C 6659, 1997 WL 367368, at *6 n.5 (N.D. Ill. June 25, 1997) (quoting Advisory Committee Note to FED. R. CIV. P. 15(c)).

A new plaintiff's claims relate back to the filing of the original plaintiff's claims "where (1) the new plaintiff's claim arose out of the same conduct, transaction or occurrence set forth in the original complaint; (2) the new plaintiff shares an identity of interest with the original plaintiff; (3) the defendants have fair notice of the new plaintiff's claim; and (4) the addition of the new plaintiff will not cause the defendants prejudice." *Jordan v. Jewel Food Stores, Inc.*, No. 10 C 340, 2015 WL 4978700, at *2 (N.D. Ill. Aug.

20, 2015) (quoting *Hawkins v. Groot Indus., Inc.*, 210 F.R.D. 226, 232 (N.D. Ill. 2002)). *See also Olech v. Village of Willowbrook*, 138 F. Supp. 2d 1036, 1044-45 (N.D. Ill. 2000).

Defendants argue that Woodland's pre-September 19, 2015 claims do not relate back to the original Complaint because she cannot satisfy elements (2) through (4) of the above test so each of these elements is examined in turn.[5]

### 1. Identity of Interest

Defendants' primary objection to applying the relation back doctrine to Woodland's pre-September 19, 2015 claims is that she purportedly holds an entirely different position than the original plaintiffs. Specifically, Phillips and Bush worked as Supervisors in Help At Home's Personal Care ("PC") line of service, whereas Woodland worked as a Supervisor in Help At Home's Developmentally Disabled ("DD") line of service.[6] Defendants interpret the original Complaint, which did not distinguish among the lines of service, to encompass only those Supervisors who worked in a PC capacity like Phillips and Bush. Since Woodland (unlike the other new plaintiffs) worked as a DD Supervisor, Defendants say she "do[es] not share the 'requisite identity of interests' with the PC Plaintiffs." (Doc. 187, at 9) (quoting *Anderson v. City of Wood Dale, IL*, No. 03 C 425, 1995 WL 106318, at *3 (N.D. Ill. Mar. 9, 1995)). The Court disagrees.

Contrary to Defendants' assertion, nothing in the original Complaint limits its coverage to PC Supervisors, or to Supervisors working in the exact same capacity as the two named plaintiffs. The original Complaint defined the putative class as "all individuals who currently work, or have worked, for Defendants as Supervisors, or any other similarly

---

[5] Defendants do not deny that Woodland's claims for unpaid overtime wages arise out of the same conduct as set forth in the original Complaint, namely, a policy of failing to pay Supervisors overtime compensation for hours they worked in excess of 40 per week.
[6] Help At Home also has a skilled care ("Skilled") line of service.

titled position during the applicable statute of limitations period." (Doc. 1, Complaint, ¶ 63). Supervisors were defined as employees who "oversee the caretakers and the provision of Defendants' home healthcare services to customers." (*Id.* ¶ 34). "More specifically, Supervisors communicate with clients, assign caretakers to clients, coordinate the particular services provided by caretakers, create caretakers' schedules, evaluate caretakers' individual performance, discipline caretakers, and help process Defendants' payroll." (*Id.* ¶ 36). Supervisors also perform "on-call" duties which are substantially similar to the duties they perform while physically present in the office. (*Id.* ¶¶ 42-47).

Rather than limiting coverage to PC Supervisors, the Complaint acknowledged that collective members may have had different job titles or worked in different locations, but stated that a collective action was still appropriate because they all performed "substantially similar job duties." (*Id.* ¶ 66). Consistent with that original theory, the FAC now alleges that Supervisors in all three lines of service "oversee the caretakers and the provision of Help At Home's home healthcare services to its customers"; "assign caretakers to . . . clients"; "create and modify . . . caretakers' schedules"; "evaluate . . . caretakers' individual performance"; and "discipline . . . caretakers." (Doc. 163, FAC, ¶¶ 41, 42, 44, 47, 50). These are the same duties set forth in the original Complaint as applying to Supervisors generally.

On its face, the original Complaint encompassed *all* Supervisors without regard to line of service, which necessarily included Woodland. The mere fact that the FAC now clarifies that Supervisors work in separate lines of service in no way demonstrates that Woodland's status as a DD Supervisor places her beyond the parameters of the original

10

Complaint. Significantly, both the original Complaint and the FAC allege that all Supervisors were denied proper overtime pay in violation of the FLSA. *See Hawkins*, 210 F.R.D. at 232 ("Each set of plaintiffs share an 'identity of interests' because they are the alleged victims of the same type of conduct."). On the facts presented, the "identity of interest" factor supports finding that Woodland's pre-September 19, 2015 FLSA claims relate back to the original Complaint.

### 2. Fair Notice and Prejudice

Defendants argue that relation back is still inappropriate because they did not have fair notice that Plaintiffs intended to include Supervisors from all lines of service in the original Complaint and will suffer undue prejudice if Woodland's untimely claims are allowed to proceed. A defendant has fair notice that it might have to defend a claim brought by a new plaintiff when "the amended complaint does not alter the known facts and issues of the original complaint." *Olech*, 138 F. Supp. 2d at 1046 (quoting *Sherwin Manor Nursing Ctr.*, 1997 WL 367368, at *7). Courts have also found fair notice where the new plaintiff's claims were "based on the same facts and legal theories as those alleged in the original complaint," and the new plaintiff was "indirectly a part of the original complaint." *Id.* With respect to prejudice, "[t]he addition of a new party plaintiff can cause undue prejudice if relevant evidence has been lost or compromised due to the passage of time, or where the proposed amendment does not afford defendant adequate time for discovery." *Id.* (quoting *Sherwin Manor Nursing Ctr.*, 1997 WL 367368, at *8").

Defendants do not address any of these factors but merely state in conclusory fashion that they "were not on notice that [Woodland's] claims were contemplated in the original Complaint," and that adding Woodland as a party would result in "substantial

11

prejudice to Defendants." (Doc. 187, at 9; Doc. 197, at 6). Given the unsupported and undeveloped nature of this argument, the Court finds it unpersuasive. Moreover, Defendants certainly have been aware that Plaintiffs (at least initially) sought discovery for *all* Supervisors and not just those in the PC line of service. Indeed, Defendants objected to such discovery. In their February 29, 2016 response to Interrogatory No. 3 of Plaintiff's Second Set of Written Discovery, Defendants stated that Help At Home provides "skilled services" and "services to developmentally disabled clients" that the company considers "distinct from the personal care services" provided by Phillips and Bush. (Doc. 60-1, at 5). Based on this perceived distinction, Defendants objected to producing documents or information relating to the DD and Skilled lines of service. (Doc. 60, at 10).

Consistent with this viewpoint, Defendants have taken the position throughout discovery that the work performed by DD and Skilled Supervisors is not sufficiently similar to the work performed by Phillips and Bush, both PC Supervisors. Plaintiffs did not file a motion to compel discovery related to DD and Skilled Supervisors, so apparently were persuaded (at least during the first 2 and a half years of discovery prior to June 2018) that the differences were significant enough that it made sense to carve DD and Skilled Supervisors out of the Complaint. Indeed, on February 26, 2018, Plaintiffs sought leave to file an amended complaint focusing solely on PC Supervisors. (Doc. 122-1; Doc. 136, at 2). Some months later, however, Plaintiffs reported on June 3, 2018 that they had recently learned from several current and former Help At Home employees that – contrary to what Defendants had claimed – DD and Skilled Supervisors actually have nearly identical job descriptions and responsibilities as PC Supervisors. (Doc. 136, at 3). As a

result, Plaintiffs asked to withdraw the pending motion to amend the complaint and sought leave to file their new amended complaint (the FAC). Leave was granted and the FAC was filed on September 19, 2018. (Doc. 163).

In light of this procedural history, Defendants are hard-pressed to argue that they had no idea they may be required to defend against claims by a DD Supervisor such as Woodland. Nor does the addition of Woodland alter the known facts or issues set forth in the original Complaint, particularly since she was fairly encompassed within the definition of "Supervisors" set forth in that pleading. *Olech*, 138 F. Supp. 2d at 1046. Further, Woodland's claims are clearly based on the same legal theories and facts set forth in the original Complaint. For purposes of the Rule 15(c) analysis, Woodland's claims satisfy the fair notice test.[7]

With respect to prejudice, Defendants make no argument that evidence has been lost or compromised due to the passage of time. *Olech*, 138 F. Supp. 2d at 1046 Defendants also raise no concerns about having adequate time to conduct discovery relating to Woodland's claims. As for concerns that Plaintiffs will unnecessarily expand the scope of discovery, this Court made clear when it allowed the filing of the FAC that this was not a license for Plaintiffs to re-open discovery on matters that could or should have been pursued earlier in the case, or that will not advance the goal of resolving whether the evidence supports class certification.

---

[7] In arguing against relation back for Woodland's claims, Defendants do not distinguish between the originally named Defendant (Help At Home) and the newly added individual Defendants (Davis, Cantrell, and Newbern) who did not personally face any claims at all until the filing of the FAC. As discussed in detail later, it is nonetheless reasonable to impute notice to the new Defendants regarding Plaintiffs' allegations (including those against DD and Skilled Supervisors); they not only remain high-level managers of Help At Home (dating back to the events alleged in the lawsuit) but also have given deposition testimony. And as noted, the original Complaint and the FAC address the same conduct. *See infra*, pp. 15-16 and n.11.

To summarize, all of the relevant 15(c) factors weigh in favor of applying the relation back doctrine to Woodland's pre-September 19, 2015 FLSA claims. The motion to dismiss these claims is therefore denied.[8]

## C. Motion to Dismiss All FLSA Claims Against Defendants Davis, Cantrell, and Newbern

Defendants finally argue that *all* FLSA claims against newly added Defendants Davis, Cantrell, and Newbern are untimely and must be dismissed because they do not relate back to the original Complaint. Once again, any claims arising from September 19, 2015 forward are within the FLSA's three-year statute of limitations period and so are timely. In addition to Woodland, plaintiffs Owens, Collinge, Felgar, Haverkamp, Ward, and Cheatham all worked for Help At Home on and after September 19, 2015.[9] As to Owens, Collinge, Felgar and Woodland, the FAC alleges that Davis and Cantrell are joint employers with Help At Home. As to Haverkamp, Ward, and Cheatham, the FAC alleges that Davis and Newbern are joint employers with Help At Home. (Doc. 163, FAC, ¶¶ 224-26, 239-40, 265-66, 277-78, 289-90, 298-99, 308-09, 322-23). Defendants' motion to dismiss these Plaintiffs' timely FLSA claims against Davis, Cantrell, and Newbern is therefore denied.

As for claims against the three new individual defendants arising prior to September 19, 2015, these are untimely unless the amendments in the FAC relate back

---

[8] In light of this finding, the Court need not address Plaintiffs' argument that Woodland's pre-September 19, 2015 claims are timely (and so relation-back is not necessary) because the original Defendants (not Davis, Cantrell, or Newbern) entered into a Stipulation with Help At Home which tolled the statute of limitations for all putative members of the proposed collective. (Doc. 48; Doc. 195, at 7).

[9] Plaintiffs Phillips, Bush, and Niles do not have any timely FLSA claims against Davis, Cantrell, or Newbern. Phillips and Bush last worked for Help At Home in or about August 2015. (Doc. 163, FAC, ¶ 203). Niles last worked for Help At Home in 2014. (*Id.* ¶ 254).

to the filing of the original Complaint under Rule 15(c)(1). For our purposes, the pertinent sections of that rule provide as follows:

> (1) When an Amendment Relates Back: An amendment to a pleading relates back to the date of the original pleading when: \*\*\*
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, *if Rule 15(c)(1)(B) is satisfied* and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1) (italics added). In other words, the amendments in the FAC relate back (and so the pre-September 19, 2015 claims against newly-added defendants Davis, Cantrell, and Newbern are timely) if the requirements in subsection (C) are satisfied. But as the italicized language in subsection (C) above reflects, one of those requirements is that subsection B is also satisfied. *See Emerus Hosp. v. Health Care Serv. Corp.*, No. 13 C 8906, 2016 WL 946916, at *5 (N.D. Ill. Mar. 14, 2016).

Defendants argue that Plaintiffs cannot satisfy subsection B because the allegations "arise out of new transactions and employment relationships." (Doc. 187, at 9). Without further explanation, Defendants state in conclusory fashion that "[t]he new lawsuit is a different controversy involving separate transactions during a different time period." (*Id.*). The flaw in this argument is that Rule 15(c)(1)(B) contemplates amendments asserting claims that arise not only out of the same transaction, but also out

15

of the same *conduct* or occurrence. Here, the FAC addresses the same conduct as alleged in the original Complaint, namely, a policy of failing to pay all Supervisors overtime compensation for hours they worked in excess of 40 per week. And this is so despite the FAC now describing the Policy as *de facto* rather than written. (Doc. 187, at 10; Doc. 197, at 7-8). *See White v. City of Chicago*, No. 14 C 3720, 2016 WL 4270152, at *12 (N.D. Ill. Aug. 15, 2016) ("Amendments that 'expand or modify the facts alleged in the earlier pleading' typically 'meet the Rule 15(c)(1)(B) test and will relate back.").

Turning to the requirements in subsection C, the Court must next determine whether defendants Davis, Cantrell, and Newbern (i) "received such notice of the action that [they] will not be prejudiced in defending on the merits," and (ii) these new defendants "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C). Defendants do not directly address the first issue (prejudice), saying nothing about how the delay in adding them to the lawsuit will impair their ability to defend themselves.[10] As for the second issue, they contend that Davis, Cantrell, and Newbern had no reason to believe they should have been named as defendants at the outset of this case. They note in this regard that the original Complaint does not mention them, and they were all deposed more than a year before Plaintiffs filed the FAC. (Doc. 187, at 10).

Plaintiffs disagree, arguing that the original Complaint "clearly demonstrates that Plaintiffs sought to establish individual liability against Help At Home's corporate managers" such as Davis, Cantrell, and Newbern because it named President and CEO

---

[10] As noted, Plaintiffs have several timely claims against Davis, Cantrell, and Newbern that are based on the same conduct at issue in the original Complaint. Since these individuals will be defending against at least some claims, it is unclear why they will be prejudiced if required to defend against all of Plaintiffs' claim.

16

Ronald Ford as a defendant. (Doc. 195, at 14). Plaintiffs acknowledge that they voluntarily dismissed Ford on February 4, 2016, just four months after filing suit, but claim this was due to a mistake in identity. Specifically, "it was unclear [to Plaintiffs] whether [Ford], or some other individual(s) were responsible for the Policy." (*Id.* at 14-15) (citing *Abdell v. City of New York*, 759 F. Supp. 2d 450, 457 (S.D.N.Y. 2010) ("After *Krupski*, it is clear that a mistake 'concerning the proper party's identity' under Rule 15(c) includes lack of knowledge regarding the conduct or liability of that party.")).

Under the Supreme Court's analysis in *Krupski*, a mistake certainly may flow from inadequate knowledge of the proper party to sue. *See Haroon v. Talbott*, No. 16 C 4720, 2017 WL 4280980, at *6 (N.D. Ill. Sept. 27, 2017) (citing *White*, 2016 WL 4270152, at *16)) ("*Krupski* defined 'mistake' to include not only an 'error, misconception, or misunderstanding,' but also '*inadequate knowledge*.'") (emphasis in original); *Brown v. Deleon*, No. 11 C 6292, 2013 WL 3812093, at *6 (N.D. Ill. July 18, 2013) ("*Krupski* supports that inadequate knowledge and lack of full information regarding a defendant's identity satisfies the mistake requirement for Rule 15(c)(1)(C)."). On the other hand, if the omission of a party from a complaint was a deliberate and informed decision, then it was not a mistake. *See Krupski,* 560 U.S. at 549 ("Making a deliberate choice to sue one party over another while understanding the factual and legal differences between the two parties may be the antithesis of making a mistake concerning the proper party's identity.").

Assuming a mistake was made here, the focus under Rule 15(c)(1) is on the *knowledge of the newly-added defendants* and whether they reasonably should have understood that Plaintiffs made a mistake in failing to sue them in the original complaint. *See Krupski*, 560 U.S. at 553-54 ("[T]he question under Rule 15(c)(1)(C)(ii) is what the

prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant."); *White*, 2016 WL 4270152, at *16. Put another way, the proper inquiry is whether Defendants knew or should have known that Plaintiffs intended to sue them. *Moore v. Cuomo*, No. 14 C 9313, 2017 WL 3263483, at *5 (N.D. Ill. Aug. 1, 2017) (citing *Krupski*, 560 U.S. at 553-54; *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559-60 (7th Cir. 2011).

Not surprisingly, these issues cannot typically be resolved on a motion to dismiss and in the absence of a developed factual record. *See Clair v. Cook County, IL*, No. 16 C 1334, 2017 WL 1355879, at *4 (N.D. Ill. Apr. 13, 2017) ("Because the complaint does not speak to what the newly added defendants knew or should have known about this lawsuit, the court cannot resolve the Rule 15(c)(1)(C)(ii) issue in their favor on a motion to dismiss."). Instead, to make the necessary findings, "the Court must have before it some record of what the newly added defendants knew about a plaintiff's lawsuit before they were added," and "[s]uch evidence is rarely before the Court on a motion to dismiss." *Hawks v. Gade*, No. 16 C 4944, 2018 WL 2193197, at *4 (N.D. Ill. May 14, 2018).[11] Similarly, the Court lacks factual information that would shed light on whether the long delay in adding Davis, Cantrell, and Newbern as defendants was a mistake by Plaintiffs or a deliberate decision. The Court does not know, for example, what specific new information Plaintiffs obtained (and when) that led to the belated addition of these three individuals as parties. If Plaintiffs had the necessary information in hand long before they

---

[11] Notably, however, each of the new Defendants not only was a high-level manager of Help At Home at the time of the alleged conduct but has remained so throughout this litigation. It is therefore likely that each has been knowledgeable of the allegations in the lawsuit from the beginning and involved in responding to discovery. As noted, each was deposed in the lawsuit some time ago.

sought leave to add them in the FAC, this may suggest Plaintiffs have deliberately decided (at least initially) not to sue the second tier managers as opposed to Help At Home's CEO.

For all of these reasons, the record before the Court does not support dismissing Davis, Cantrell, or Newbern from the lawsuit. Some claims against them are timely without application of the relation-back rule. As to the others, the Court lacks the necessary factual record to conclude that the amendments in the FAC cannot under any circumstances relate back to the original Complaint. Defendants' motion to dismiss the individual defendants is denied.

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss [186] is denied.

ENTER:

Dated: January 18, 2019

_____
SHEILA FINNEGAN
United States Magistrate Judge